**Ex parte Chad PARKER.**

No. 10–00–131–CR.

Court of Appeals of Texas, Waco.

Aug. 9, 2000.

Steve Keathley, Keathley & Keathley, Corsicana, for appellant.

Damara H. Watkins, Asst. Crim. Dist. Atty., Corsicana, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

GRAY, Justice.

Chad Parker is charged with an aggravated sexual assault of a child under fourteen years of age. His pretrial bail was set at $75,000. Parker filed a writ of habeas corpus to reduce his bail. The trial court reduced his bail to $50,000. After securing findings of fact and conclusions of law from the trial court, Parker appealed the reduction to this Court. The trial court's judgment is affirmed.

### APPLICABLE LAW

We review a trial court's decision to reduce a defendant's pretrial bail under an abuse of discretion standard. *Ex parte Spaulding*, 612 S.W.2d 509, 511 (Tex.Crim. App.1981); *Ex parte McCullough*, 993 S.W.2d 836, 837 (Tex.App.—Waco 1999, no pet.). A habeas applicant has the burden of proving to the trial court that his bail is excessive. *Ex parte Rubac*, 611 S.W.2d 848, 849 (Tex.Crim.App. [Panel Op.] 1981); *McCullough*, 993 S.W.2d at 837.

The Code of Criminal Procedure provides the rules for fixing the amount of bail. TEX.CODE CRIM. PROC. ANN. art. 17.15 (Vernon Supp.2000). Whoever sets a defendant's bail, be it the court, judge, magistrate, or other officer, is governed by the following rules:

1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.
2. The power to require bail is not to be so used as to make it an instrument of oppression.
3. The nature of the offense and the circumstances under which it was committed are to be considered.

4. The ability to make bail is to be regarded, and proof may be taken upon this point.
5. The future safety of a victim of the alleged offense and the community shall be considered.

*Id.* Family and community ties, length of residence in the county, prior criminal record, conformity with conditions of previous bond, and aggravating circumstances of the offense should also be considered. *Rubac*, 611 S.W.2d at 849–850; *McCullough*, 993 S.W.2d at 837. The accused's inability to make bail, even to the point of indigence, does not control over the other factors. *Ex parte Charlesworth*, 600 S.W.2d 316, 317 (Tex.Crim.App. [Panel Op.] 1980); *McCullough*, 993 S.W.2d at 837.

### EVIDENCE

Parker contends that he cannot afford even the reduced bail, has no criminal record, has ties to the community, and is not a flight risk. Although testimony was presented concerning his ability to make bail, the trial court's findings, which were supported by the record, were contrary to Parker's remaining contentions. Parker is accused of the first degree felony offense of aggravated sexual assault. TEX. PEN. CODE ANN. § 22.021 (Vernon Supp.2000). The alleged victim is 13 years of age while Parker is 19 years of age. Parker fled to Louisiana when he became aware of the allegations against him and after he agreed to take a polygraph examination. Parker's mother declined to help investigators locate him.[1] He has a DWI charge pending against him and a juvenile history in Louisiana. He has family and job prospects in Louisiana. His mother and stepgrandmother have only lived in Navarro

---

1. The concurring and dissenting opinions have a sharp disagreement regarding whether the trial court could properly consider the offense report and thus, whether the report is properly part of the record before us. This is the only one of the trial court's findings of fact that is supported solely by the offense report. Some of the immaterial details included in the findings, such as dates, times and exact age of the victim, were also contained only in the offense report. However, the absence of this finding and the immaterial details would not alter this opinion. In fact, both parties briefed and were prepared to argue the case without reference to the offense report. The trial court's order is amply supported by the testimony received at the hearing without regard to the offense report.

County, Texas, for less than one year. There is no evidence in the record of how long Parker has resided in Navarro County.

The trial court concluded that the nature of the offense, the possible consequences of a conviction, and Parker's history of absenting himself from the State and avoiding contact with investigators required a substantial bail amount. The trial court also concluded that bail in the amount of $50,000 was not unreasonable under the circumstances.

CONCLUSION

After considering the record and the necessary factors, the trial court did not abuse its discretion in refusing to reduce Parker's bail to $15,000[2] as he requested. The order of the trial court is affirmed.

Chief Justice DAVIS concurring and Justice VANCE dissenting.

REX D. DAVIS, Chief Justice, concurring.

It is apparent from the Findings of Fact and Conclusions of Law filed by the court, as well as the court's statements in the record, that the trial court considered facts derived solely from an offense report which was never formally introduced into evidence. I write separately to address the propriety of the court's actions.

In a hearing on a petition for writ of habeas corpus seeking a reduction of bail, the trial court is *required* to consider the nature of the offense with which the defendant is charged and the circumstances under which it was committed. TEX.CRIM. PROC.CODE. ANN. § 17.15 (Vernon Supp. 2000) (emphasis added). It is well settled that the Rules of Evidence are not applicable in such hearings. TEX.R. EVID. 101(d)(1)(e); *Garcia v. State*, 775 S.W.2d

879, 880 (Tex.App.—San Antonio 1989, no pet.).

At the conclusion of the hearing the trial court announced that, in reaching its decision, it had considered facts contained in an offense report. The trial court's Findings of Fact and Conclusions of Law contain a written request by the trial judge that the district clerk include the offense report in the clerk's record. The report itself contains a notation initialed by the trial judge indicating that it had been "considered by agreement." The document's inclusion in the clerk's record without objection renders it a proper component of the record on appeal. *See Killion v. State*, 503 S.W.2d 765, 766 (Tex.Crim.App.1973); *cf. Pitts v. State*, 916 S.W.2d 507, 509–10 (Tex.Crim.App.1996); *Daw v. State*, 17 S.W.3d 330, 332 (Tex.App.—Waco 2000, no pet.). We may thus consider its contents in determining whether the trial court's decision constituted an abuse of discretion.

While I continue to be concerned about the parameters of what is appropriate for the trial court to consider in a bail reduction hearing, I concur in the result reached by the lead opinion.

VANCE, Justice, dissenting.

Today my brethren go outside of the appellate record to sustain a ruling in a bail-reduction hearing, having been led into that error by the trial judge, who acted as an advocate on behalf of the State when he introduced into the record an offense report that no party had offered or suggested. Because the trial court's decision regarding bail is not supported by the appellate record, I dissent.

**REVIEW STANDARD**

I agree that our review of a trial court's decision in a bail-reduction hearing is under an abuse of discretion standard. *Ex*

---

**2.** Parker requested the trial court to lower his bail to $15,000. However, he asked this Court on appeal to lower it to $5,000. Because this is an appeal and not an original proceeding, there is some question whether

we have authority to determine the amount of reasonable bail. The authority to set bail at less than what was requested from the trial court is even further suspect.

*parte McCullough,* 993 S.W.2d 836, 837 (Tex.App.—Waco 1999, no pet.); *Ex parte Emery,* 970 S.W.2d 144, 145 (Tex.App.—Waco 1998, no pet.). The burden is on the accused to show the bail amount to be excessive under article 17.15 of the Code of Criminal Procedure. *Id; see* Tex.Code Crim. Proc. Ann. art. 17.15 (Vernon Supp. 2000). Article 17.15 lists five factors to consider when determining if bail is excessive. They are:

> 1) The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.
>
> 2) The power to require bail is not to be so used as to make it an instrument of oppression.
>
> 3) The nature of the offense and the circumstances under which it was committed are to be considered.
>
> 4) The ability to make bail is to be regarded, and proof may be taken upon this point.
>
> 5) The future safety of a victim of the alleged offense and the community shall be considered.

*Id.* Family and community ties, length of residence in the county, prior criminal record, conformity with conditions of previous bail bonds, and aggravating circumstances of the offense should also be considered. *Emery,* 970 S.W.2d at 145 (citing *Ex parte Rubac,* 611 S.W.2d 848, 849–50 (Tex.Crim. App. [Panel Op.] 1981)).

## DETERMINATION OF THE APPELLATE RECORD

Parker presented evidence that relates to the first, second, and fourth factors

listed above. The State presented neither witnesses nor documentary evidence.[1] Thus, the record on appeal should be limited to testimony presented by the defendant and the cross-examination of those witnesses by the State. The judge, however, was apparently not content with the evidence he had heard. After both parties rested and made brief statements by way of argument for their respective positions, the following took place:

> THE COURT: I have the benefit of considering some of the circumstances in this case based on a companion case and a hearing that I just held with regard to that case in which I've had an opportunity to consider the allegations contained in the offense reports, etcetera. And although I'm aware that those are merely allegations at this point, I believe after considering all the evidence I will reduce bail. That bail will be reduced to $50,000 in this case.

Thus, the judge summarily announced that he was considering an offense report as part of the evidence. The offense report was not produced at the hearing; it was not marked as an exhibit; no copies were furnished to counsel;[2] the document was not identified or sponsored as an exhibit by a witness whom Parker's counsel could cross-examine. In short, the trial judge's announcement gave counsel no opportunity to object.[3]

Courts have long been concerned when a trial judge abandons his neutral role. As early as 1912, the Court of Criminal Ap-

This is the second appeal we have heard in a relatively few months in which the State has produced no evidence to counter the evidence presented by the accused in a bail-reduction hearing.

Although the record does not reflect the identity of counsel in the "companion case," the parties agreed at oral argument that it was not Parker's counsel who had represented another defendant in that proceeding.

The cases cited in the concurring opinion do not support consideration of this offense report. In *Killion v. State,* the defendant acknowledged that he freely and voluntarily signed a stipulation agreeing to the facts of the offense. 503 S.W.2d 765, 766 (Tex.Crim. App.1973). In *Pitts v. State,* "counsel for Appellant announced that Appellant agreed the trial court could receive his signed written judicial confession." 916 S.W.2d 507, 508 (Tex.Crim.App.1996). And, in *Daw v. State,* Daw "consented to a stipulation of evidence," which we found included his confession. 17 S.W.3d 330, 333 (Tex.App.—Waco 2000, no pet.).

peals, in reviewing a case in which the judge had examined the witnesses, expressed this idea:

> Now, in the examination of a witness, however fair-minded the judge may be, it would be almost impossible for him to so conduct it as not to suggest in some measure that he is on one side or the other. And, moreover, we have noticed that, *when the court attempts to thus usurp the functions of counsel, he is apt to ask questions that are leading in character, and that are otherwise objectionable. By carefully attending to his own duties and conserving his own functions, he will best be able to hold the scales of justice impartially as between the counsel who are managing the case for and against the state; and, whenever he does interfere, it is generally at the expense of his own authority and dignity, which should be rigidly guarded, in order that he may administer the law with fairness and impartiality, and with that authority and power which pertains to the office.*

*Drake v. State,* 65 Tex.Crim. 282, 143 S.W. 1157, 1160 (1912) (emphasis added).

As the First Court of Appeals has observed:

> One of the most fundamental components of a fair trial is "a neutral and detached judge." *Ward v. Village of Monroeville,* 409 U.S. 57, 62, 93 S.Ct. 80, 84, 34 L.Ed.2d 267 (1972). A judge should be fair and impartial and not act as an advocate for any party. *Delaporte v. Preston Square, Inc.,* 680 S.W.2d 561, 563 (Tex.App.—Dallas 1984, writ ref'd n.r.e.). A judge should not be any party's adversary. *Ex parte Finn,* 615 S.W.2d 293, 296 (Tex.Civ.App.—Dallas 1981, no writ); *see Delaporte,* 680 S.W.2d at 563. The impartiality of the judge is not only a matter of constitutional law, but of public policy, as well:

>> Public policy demands that a judge who tries a case act with absolute impartiality. It further demands that a judge appear to be impartial so that

no doubts or suspicions exist as to the fairness or the integrity of the court. Judicial decisions rendered under circumstances that suggest bias, prejudice or favoritism undermine the integrity of the courts, breed skepticism and mistrust, and thwart the principles on which the judicial system is based.

*CNA Ins. Co. v. Scheffey,* 828 S.W.2d 785, 792 (Tex.App.—Texarkana 1992, writ denied) (citations omitted).

*Metzger v. Sebek,* 892 S.W.2d 20, 37–38 (Tex.App.—Houston [1st Dist.] 1994, writ denied).

The Fourteenth Court of Appeals recently considered a case in which the trial judge "clarified the record" with a lengthy statement in which she relied upon her recollection of the events preceding appellant's plea to refute much of the testimony of his trial counsel. *George v. State,* 20 S.W.3d 130, 139 (Tex.App.—Houston [14th Dist.] 2000, no pet. h.). In discussing the role of the trial judge, the majority said:

> It is well-established that a trial judge may clarify the record when the spoken word does not reflect the true trial proceedings, and explanations of this sort may be of assistance to an appellate court. *See Myers v. State,* 781 S.W.2d 730, 733–34 (Tex.App.—Fort Worth 1989, pet. ref'd). For example, when a witness points to or describes the clothing of the defendant worn at trial, the judge may direct that the record reflect that the witness identified the defendant. *Id.See also Martinez v. State,* 822 S.W.2d 276, 282 (Tex.App.—Corpus Christi 1991, no pet.) and *Chase v. State,* 750 S.W.2d 41, 43–44 (Tex.App.—Fort Worth 1988, pet. ref'd) (where trial judge clarified the record by explaining that a child witness identified the vaginal area of an anatomically correct doll).

> "Clarification" of the record is proper where the trial judge, acting as the "eyes" of the appellate court, makes an explanation of some event or physical

phenomenon observable to those in the courtroom and about which there is no reasonable dispute. Here, the judge recited facts which were very much in dispute. In fact, she carefully rebutted each allegation of impropriety made by appellant's trial counsel. Thus, we find the comments at issue fall outside a proper "clarification" of the record.

Appellant contends trial judge's remarks are "testimony" and that by uttering such remarks she made herself a witness in the case. *By her own admission, the judge sought to amplify the appellate record—something normally reserved only for witnesses. Further, the burden of making a record to reveal or dispel error rests with the parties, not the court. In her role as a fact-finder, the judge may consider her personal recollections of prior testimony and events in the cause, but she must do so silently. Once the judge begins assisting one side or the other in constructing a record, her position is altered from one of being a neutral fact-finder to an adversary.* "It is difficult to see how the neutral role of the court could be more compromised, or more blurred with the prosecutor's role, than when the judge serves as a witness for the state." *Brown v. Lynaugh,* 843 F.2d 849, 851 (5th Cir.1988).

*Id.* at 139–40 (emphasis added). The dissenting Chief Justice went even further:

Not only did she testify, however. Her testimony was clearly adverse to appellant, giving the judge the appearance of bias frowned on by the Constitution. *Brown v. Lynaugh,* 843 F.2d 849, 851 (5th Cir.1988) ("[I]t is difficult to see how the neutral role of the court could be more compromised, or more blurred with the prosecutor's role, than when the judge serves as a witness for the state."); *Tyler* [v. Swenson, 427 F.2d 412, 415 (8th Cir.1970)] ("We think it runs against the grain of fairness to say that the same judge may consider his own crucial testimony and recollection

rebutting petitioner's claim and simultaneously pass upon the credibility of all witnesses in weighing the evidence").

*Id.* at 143–44 (Murphy, C.J., dissenting).

Because the court, not one of the parties, inserted the offense report into the record, we should not consider it. As the above cases indicate, it is improper for the trial judge to introduce evidence designed to assist one party or the other or to bolster one side's case.

Items not properly in the record cannot be considered on appeal. *See* Tex.R.App. P. 34.1, 34.5, 34.6 (contents of Appellate Record); *see also Gabriel v. State,* 973 S.W.2d 715, 719 (Tex.App.—Waco 1998, no pet.) (letter attached to appellate brief not part of the record); *Kaman v. State,* 923 S.W.2d 129, 131 n. 6, 132 (Tex.App.—Houston [1st Dist.] 1996, no pet.) (purported indictment physically present in appellate transcript not considered); *Atchison v. Weingarten Realty Management Co.,* 916 S.W.2d 74, 76–77 (Tex.App.—Houston [1st Dist.] 1996, no writ) (motion for summary judgment physically present in the transcript as an attachment to another document not considered). Thus, when evaluating the trial court's decision on Parker's motion to reduce his bail, we should not consider the offense report as part of the appellate record.

## REVIEW OF THE APPELLATE RECORD

Based on a review of the record properly before us, I would find that the court abused its discretion in the way it resolved Parker's complaint about the amount of his bail. In its "Findings," the court found that "The defendant apparently has no family ties which would inhibit his departure from the community." The record demonstrates otherwise. The undisputed evidence shows that Parker lives with his step-grandmother, Rose Marie Sciortino, and his mother, Darla Jean Myers, who is "very ill" and receives disability income. Although they have lived in Navarro County only since August of 1999, Sciortino is

employed as a licensed vocational nurse at the Navarro Regional Hospital. Furthermore, Sciortino's sister-in-law, Wilma Frank, lives in Corsicana, a "cousin Jody" lives in Navarro County, and an "aunt Betty," has lived in Navarro County for "a long time." Sciortino said that she and the members of Parker's extended family would help assure that he complied with the conditions of bail and that he "abides by my instructions and his mother's."

Parker testified that he had less than $10 in his jail account, the clothes he had on, and a few possessions in his cell. He said he understood that, if admitted to bail, he would be required to remain in Navarro County and that he would make all appearances in court when required. He admitted that he left the state after the date of the alleged offense and was in jail in Louisiana on an unresolved DWI charge. He said that his only other involvement with the law was a juvenile charge in Louisiana that was "dropped." He admitted that he did not appear for a polygraph examination he had agreed to, but said it was because he was told not to undergo such an examination without his attorney being present.

Neither party introduced evidence relating to the circumstances under which the offense was allegedly committed. The information relating to this factor was contained in the offense report, which was not part of the record of the hearing and should not be considered on appeal. Thus, the record available for our review contains no evidence about the circumstances of the alleged offense.

Sciortino presented uncontroverted testimony that the maximum bail amount which the family could afford would be $10,000—$15,000.

The records contains no evidence that relates to the fifth factor, *i.e.*, the future safety of the victim and the community.

---

4. I consider evidence of his family's ability to assist in making bail because Parker himself introduced evidence of their ability and willingness to assist him.

## CONCLUSION

In light of the uncontroverted testimony about Parker's ability to make bail,[4] the court's decision to reduce the amount of bail from $75,000 to $50,000 was tantamount to no reduction at all. Considering the evidence properly in the record and considering the factors listed above, I would find that the court's decision is not supported by the record. Thus, I would find that the court abused its discretion by failing to further reduce the amount of the bail. I would sustain the point of error, set aside the order, and grant habeas corpus relief.